UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATARRA BUSH,

    Plaintiff,

v.                                                                            Case No.:  8:23-cv-1488-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Latarra Bush seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"), finding she was no longer disabled since September 1, 2019. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

Generally, an ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Yet when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for a Title II claim and a seven-step process for a Title XVI claim to determine whether a plaintiff's disability benefits should continue. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b). Here, the ALJ followed an eight-step evaluation and the Court adopts the explanation of each step as set forth in the decision. (Tr. 12-13).

C.   **Procedural History**

On January 24, 2014, Plaintiff was found disabled beginning on April 23, 2010. (Tr. 11, 98, 101-108). On May 25, 2016, SSA determined Plaintiff continued to be disabled. (Tr. 11, 109-123). On September 30, 2019, SSA determined that Plaintiff's health had improved since the last review of her case and she was no longer disabled as of September 1, 2019. (Tr. 11, 124-140). After a disability hearing

by a State agency Disability Hearing Officer, the determination was upheld on reconsideration. (Tr. 11, 169-76).

Plaintiff requested a hearing, and on September 8, 2022, a hearing was held before Administrative Law Judge Ryan Kirzner ("ALJ"). (Tr. 45-97). On January 27, 2023, the ALJ entered a decision finding Plaintiff's disability ended on September 1, 2019, and she had not become disabled again since that date. (Tr. 11-23). On May 22, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on July 3, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 6).

**D.    Summary of ALJ's Decision**

In this case, the ALJ found the most recent favorable medical decision finding Plaintiff continued to be disabled was the decision dated May 25, 2016. (Tr. 13). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 13). At the time of the CPD, the ALJ found Plaintiff to have the following medically determinable impairments:

> lumbar degenerative disc disease, headache, major depressive disorder, and panic disorder. The record was found to have had no significant medical improvement with the original residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except the claimant could lift and/or carry 10 pounds occasionally and 5 pounds frequently; she could stand and/or walk for 4 hours and sit for 4 hours in an 8-hour workday; she was limited to occasional pushing and

>pulling with the upper extremities; she could frequently balance and occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; she could never climb ladders, ropes, or scaffolds; she could occasionally reach above shoulder level with both arms; she could constantly handle, finger, and feel with both hands; she was limited to occasional exposure to extreme cold, extreme heat, wetness, humidity, and vibration; she could occasionally work around moving mechanical parts, high exposed places, and hazards; she was able to perform simple, routine, and repetitive tasks; she was able to understand, remember, and carry out simple instructions; she was able to adapt to infrequent changes in the work setting; she was limited to work that requires no more than an occasional interaction with crowds, the public, and co-workers; she was limited to work that requires frequent supervision; and she was unable to meet fast paced or high production demands.

(Tr. 13).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of the decision. (Tr. 13). At step two, the ALJ found that since September 1, 2019, Plaintiff has had the following medically determinable impairments: "lumbar degenerative disc disease, headache, obesity, major depressive disorder, dysthymic disorder, and post-traumatic stress disorder (PTSD). These are the claimant's current impairments." (Tr. 13).

Since September 1, 2019, the ALJ found at step three that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, 404.1526). (Tr. 14). The ALJ further found that medical improvement occurred on September 1, 2019. (Tr. 16).

At step four, the ALJ found that the medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's residual functional capacity. (Tr. 16). At step six, the ALJ determined that since September 1, 2019, Plaintiff continued to have a severe impairment or combination of severe impairments. (Tr. 17).

At step seven, the ALJ found that since September 1, 2019, Plaintiff has had the following residual functional capacity ("RFC"):

> Based on the impairments present since September 1, 2019, the claimant has had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can frequently climb ramps/stairs, balance, kneel, crouch, and crawl, but only occasionally stoop and climb ladders, ropes, or scaffolds; she needs to avoid concentrated exposure to vibration and workplace hazards defined as moving mechanical parts and unprotected heights; she is limited to simple and routine tasks; she must avoid fast paced or high production quota work; and she is limited to work considered low stress defined as only infrequent workplace changes, little decision making required, and conflict with other is not the primary function of the job.

(Tr. 17).

At step eight, the ALJ determined that since September 1, 2019, Plaintiff has been unable to perform her past relevant work as a file clerk and data entry clerk. (Tr. 21). The ALJ found that after considering Plaintiff's age (36 years old on September 1, 2019), education (at least high school), work experience, and RFC, and based on the impairments present since September 1, 2019, Plaintiff had been able to perform a significant number of jobs in the national economy. (Tr. 22).

Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   Routing clerk, DOT 222.687-022,[1] light, SVP 2

    (2)   Checker I, DOT 222.687-010, light, SVP 2

    (3)   Router, DOT 222.587-038. light SVP 2

(Tr. 22). The ALJ concluded that Plaintiff's disability ended on September 1, 2019, and she had not become disabled again since that date. (Tr. 22).

## II.   Analysis

On appeal, Plaintiff raises the issue of whether the ALJ failed to properly compare the original evidence with new medical evidence at the time of the comparison point decision before finding medical improvement had occurred. (Doc. 19, p. 3). Plaintiff argues that the record did not contain two evaluations completed in 2013 that were considered for the May 25, 2016, comparison point decision, and as such, the ALJ could not have considered them for the 2019 redetermination decision. (Doc. 19, p. 4). In the context of properly comparing the evidence, Plaintiff also argues that the ALJ did not properly consider Shelley Ochs, Psy.D.'s Clinical Evaluation dated August 7, 2019. (Doc. 19, p. 8). These arguments are not persuasive.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012). At step three, the ALJ must determine whether Plaintiff had "medical improvement," which is defined as any decrease in the medical severity of a plaintiff's impairments, which were present at the most recent favorable decision. *Id.* (citing 20 C.F.R. § 404.1594(b)(1)). "More specifically, whether medical severity has decreased 'is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).'" *Id.* The ALJ must actually compare the previous and current medical evidence. *Id.* If the ALJ fails to evaluate the prior medical evidence and make a comparison, then a court must reverse and remand the application. *Id.*

To be clear, the original decision finding Plaintiff disabled was dated January 24, 2014, and was not the comparison point decision. Instead, the most recent favorable decision or the comparison point decision was dated May 25, 2016. (Tr. 13). As the regulations provide:

> For purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or

- 8 -

> continued to be disabled to the medical severity of that impairment(s) at that time. If medical improvement has occurred, we will compare your current functional capacity to do basic work activities ( i.e., your residual functional capacity) based on this previously existing impairment(s) with your prior residual functional capacity in order to determine whether the medical improvement is related to your ability to do work. The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final.

20 C.F.R. § 404.1594(b)(7). Thus, the ALJ properly compared the evidence supporting the May 25, 2016 favorable decision with Plaintiff current medical records. (Tr. 13).

Plaintiff first argues that remand is required because two consultative examinations were not contained in the record and therefore the ALJ erred in not including them and not considering them. Not all of the medical evidence mentioned in the January 24, 2014 favorable decision was contained in the record, but the record did contain some of the medical evidence from this period. (Tr. 433-495, 536-46, 561-71). Plaintiff correctly identifies that the record did not include a July 31, 2013 psychological consultative exam report from Lawrence Pasman, Ph.D. and an August 1, 2013 physical consultative report from Eniola Owi, M.D. (Doc. 19, p. 4; Tr. 118). Even so, these medical providers conducted these consultative examinations nearly three years before the comparison point decision of May 25, 2016. Likewise, Plaintiff later argues that the ALJ erred in not comparing Linda T. Inatsuka, Ph.D.'s November 2, 2010 Psychological Evaluation with the current

medical evidence. But this evaluation was conducted nearly six years before the CPD. The relevancy of these reports is questionable, given that the ALJ considered other medical records from the relevant time period.

In any event, the ALJ considered the medical and other evidence at the time of the CPD and found the record showed Plaintiff complained of pain, swelling, weakness/sharp leg pain, headaches, anemia, memory issues, depression, and anxiety. (Tr. 15). Beginning with the physical impairments, the ALJ summarized Plaintiff's medical impairments at the CPD: "[e]xamination notes indicated dysesthesias in the bilateral sacral area with a diagnosis of lumbosacral neuritis." (Tr. 16). To confirm these findings, ALJ reviewed the Disability Determination Explanation dated May 25, 2016, (Tr. 109-22, B2A), treatment records in September 2015, October 2015, and February 2016 (Tr. 514-529, B7F, B8F), and multiple treatment records from June 2010 through February 28, 2017. (Tr. 535-590, B9F). The ALJ compared these treatment records with a current physical consultative examination dated July 29, 2019, conducted by Charles Lebowitz, M.D. (Tr. 16, 616-21, B14F). Dr. Lebowitz noted that Plaintiff complained of low back pain that radiated into her left lower leg. (Tr. 616). He also reviewed an MRI of her lumbar spine that showed a herniated disk at L4-5 on the right side. (Tr. 616). On examination, Dr. Lebowitz made generally normal findings, including: full strength in all extremities; and straight leg raises, reflexes, and pulses within normal limits.

(Tr. 617). Plaintiff also had full range of motion in all joints and was able to walk without impairment. (Tr. 617). As the ALJ noted, Dr. Lebowitz's examination revealed no deficits. (Tr. 16, 616-18). Thus, the ALJ correctly found medical improvement in Plaintiff's physical impairments.

For mental impairments, the ALJ noted that at the CPD, Plaintiff had memory issues, depression, and anxiety. (Tr. 16). The ALJ continued: "[m]ental status examination notes indicated tearfulness with problems sleeping and hopelessness. Treatment notes indicated diagnoses of major depressive disorder, panic disorder, and generalized anxiety disorder." (Tr. 16). To confirm these findings, the ALJ reviewed the Disability Determination Explanation dated May 25, 2016, (Tr. 109-22, B2A), and a Psychiatric Evaluation dated November 4, 2015. (Tr. 16, 501-504). The ALJ then compared these records with a Clinical Evaluation with Mental Status Examination performed by Shelley Ochs, Psy.D. on August 7, 2019. (Tr. 16, 623-28). The ALJ determined that Dr. Ochs' exam findings were "unremarkable with the exception of tearfulness, depressed mood/affect, impaired recent/remote memory, impaired concentration, psychomotor deficits, and questionable insight/judgment." (Tr. 16). The ALJ also found that mental health notes indicated conservative treatment with no emergency care or psychiatric hospitalization. (Tr. 16). Thus, the ALJ considered the evidence at the CPD, compared that evidence to the current

medical evidence, and then found medical improvement. The ALJ properly evaluated the step-three comparison.

Plaintiff argues that Dr. Ochs' evaluation did not support a finding that medical improvement occurred as to Plaintiff's mental impairments. (Doc. 19, p. 8). Plaintiff contends that Dr. Ochs' findings were not "unremarkable" as the ALJ claimed. (Doc. 19, p. 8). Contrary to Plaintiff's argument, many of Dr. Ochs' mental status observations were generally normal, with the exceptions listed by the ALJ. For example, Dr. Ochs' observed: Plaintiff's appearance was adequate, she was cooperative, she was oriented in all three spheres, and was alert. (Tr. 626). She accomplished serial sevens, could count backwards, and could recite the alphabet. (Tr. 626). In addition, her associations were intact, her speech was understandable, she had no conceptual disorganization, her fund of knowledge appeared adequate, she experienced no difficulty dealing with abstract concepts, and her computational skills appeared within the normal range. (Tr. 626). Thus overall the ALJ noted the unremarkable findings, but recognized some exceptions as well. Plus, the ALJ included limitations in the RFC to accommodate Plaintiff's mental limitations.

Moreover, Plaintiff arguably ignores that later in the decision, the ALJ afforded little weight to Dr. Ochs' opinions. In weighing Dr. Ochs' opinion, the ALJ found:

> I gave little weight to consultative examiner Dr. Shelley Ochs Psy.D., who opined in August of 2019 that the claimant had

> impaired memory, deficits in interpersonal functioning, impaired concentration/persistence/pace, and adaptive deficits (Exhibit B15F). The suggestions by this consultant were too vague without any specific limitations. The claimant reported that she was taking online classes for computer programming. She testified that she was not taking her medication as prescribed. Furthermore, the record indicated conservative treatment by therapy for the most part.

(Tr. 18). Thus, the ALJ acknowledged the limitations found by Dr. Ochs, but discounted these limitations, by finding the suggestions vague. (Tr. 18). The ALJ also discounted the limitations when noting that Plaintiff took online computer coding classes, was non-compliant with medications, and was having conservative treatment by therapy for the most part. (Tr. 18). Plaintiff does not object to the weight given Dr. Ochs' opinion and therefore the issue is waived. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (finding in a social security case, issues not raised before the district court are waived).

All in all, the ALJ properly evaluated the evidence of record. He compared Plaintiff's medical and other evidence prior to and at the time of the CPD with Plaintiff's current medical and other evidence of record. The ALJ correctly found medical improvement occurred on September 1, 2019, and then found that medical improvement was related to Plaintiff's ability to work because it resulted in an increase in Plaintiff's RFC. (Tr. 16). The ALJ also found Plaintiff continued to have severe physical impairments of lumbar degenerative disc disease, obesity, and severe mental impairments of major depressive disorder, dysthymic disorder, and PTSD.

(Tr. 17). The ALJ considered Plaintiff's functional limitations and included additional limitations in the RFC assessment for Plaintiff's physical and mental impairments, including limiting her to simple routine tasks, to avoiding fast paced or high production quota work, and to low stress work. (Tr. 17).

In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ properly considered the evidence from the CPD of May 25, 2016 and compared it to the current evidence in finding Plaintiff was no longer disabled since September 1, 2019. While the record may contain some evidence to support Plaintiff's position, the issue is whether substantial evidence supports the ALJ's decision. It does. Therefore, remand is not warranted here.

### III.  Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 10, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties